UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

-------------------------------------------------------
DERJUAN THARRINGTON and
VALERIE LEWIS

             Plaintiffs,

    v.

THE BOARD OF SUPERVISORS FOR
SOUTHERN UNIVERSITY AND
AGRICULTURAL & MECHANICAL
COLLEGE; and DENNIS J. SHIELDS, in his
official capacity as President of the Southern
University System and Chancellor of Southern
University and Agricultural & Mechanical
College.

             Defendants.

-------------------------------------------------------

| |
|---|
| **CASE NO.:** |
| **Judge:** |
| **Magistrate:** |

## COMPLAINT

    Plaintiffs, DERJUAN THARRINGTON and VALERIE LEWIS (hereinafter referred to collectively as "PLAINTIFFS"), by and through their undersigned counsel, hereby file this Complaint and sue THE BOARD OF SUPERVISORS FOR SOUTHERN UNIVERSITY AND AGRICULTURAL & MECHANICAL COLLEGE; AND DENNIS J. SHIELDS, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE SOUTHERN UNIVERSITY SYSTEM AND CHANCELLOR OF SOUTHERN UNIVERSITY AND AGRICULTURAL & MECHANICAL COLLEGE (hereinafter, "DEFENDANTS") for damages, injunctive and declaratory relief, attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("Americans with Disabilities Act" or "ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Rehabilitation Act"); and allege the following:

## JURISDICTION AND PARTIES

1.    This is an action for injunctive and declaratory relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.[1]

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property which is the subject of this action is in East Baton Rouge Parish, Louisiana.

3.    PLAINTIFFS are persons of the age of majority and are citizens of the State of Louisiana.

4.    PLAINTIFFS both reside in East Baton Rouge Parish, Baton Rouge, Louisiana.

5.    MR. THARRINGTON is a qualified individual with a disability under the ADA and RA.

6.    MR. THARRINGTON is a veteran with Post Traumatic Stress Disorder and Dyslexia.

7.    Due to his disability, MR. THARRINGTON is substantially impaired in several major life activities and requires accommodations within educational environments. Specifically, MR. THARRINGTON has difficulty absorbing and processing information, reading, writing, and spelling, especially in a classroom or test-taking setting.

8.    MS. LEWIS is a qualified individual with a disability under the ADA and RA.

9.    MS. LEWIS is a veteran with Post Traumatic Stress Disorder, Fibromyalgia, Carpal Tunnel Syndrome, Cervical Neck Strain, Knee and Back Injuries.

10.   Due to her disability, MS. LEWIS is substantially impaired in several major life activities and requires accommodations within educational environments. Specifically, MS. LEWIS

---

[1] Plaintiffs only seek damages under the Rehabilitation Act of 1973. Plaintiffs seek both compensatory and nominal damages. It is PLAINTIFFS' position that an award of nominal damages would confer significant civil rights to the public, as a judgment in their favor against DEFENDANTS, regardless of the amount, would deter DEFENDANTS from discriminating against individuals with disabilities in the future.

has difficulty absorbing and processing information, reading skills, writing, and spelling, and especially in a classroom or note-taking setting and requires extra time to complete assignments, exams, and quizzes.

11.    Southern University and Agricultural & Mechanical College is a Louisiana public college with campuses throughout the Baton Rouge metropolitan area managed and operated by the Board of Supervisors for the Southern University and Agricultural & Mechanical College (hereinafter "the BOARD").

12.    Dennis J. Shields is the President of the Southern University System and Chancellor of Southern University and Agricultural & Mechanical College (hereinafter "MR. SHIELDS") and is responsible for ensuring that the colleges managed and operated by the BOARD comply with the law. MR. SHIELDS is sued in his official capacity only under the doctrine of *Ex Parte Young*.

13.    Upon information and belief, Southern University and Agricultural & Mechanical College is a public facility which is open to members of the public, including PLAINTIFFS.

14.    DEFENDANTS are responsible for complying with the obligations of the ADA and RA.

15.    All events giving rise to this lawsuit occurred in the Middle District of Louisiana, East Baton Rouge Parish, Louisiana.

## STATEMENT OF FACTS FOR DERJUAN THARRINGTON

16.    MR. THARRINGTON is a veteran with Post Traumatic Stress Disorder and Dyslexia.

17.    Due to his disability, MR. THARRINGTON is substantially impaired in several major life activities and requires accommodations within educational environments. MR. THARRINGTON has difficulty absorbing and processing information, reading, writing, and spelling, especially in a classroom or test-taking setting.

18.   Specifically, in a classroom setting MR. THARRINGTON requires a notetaker to take notes for him as well as class lecture notes in order for him to process, retain, and refer back to classroom lecture material.

19.   MR. THARRINGTON applied to Southern University Law Center for and received a Disability Accommodation Notice granting him the accommodations necessary for him to partake in DEFENDANTS' classes and curriculum in a manner that is equivalent to that of persons who do not have Post Traumatic Stress Disorder or Dyslexia.

20.   MR. THARRINGTON started classes at Southern University Law Center in August 2022.

21.   Throughout his time at Southern University Law Center however, MR. THARRINGTON has not been provided the class and lecture notes required in his Approved Accommodations.

22.   After beginning his classes at Southern University Law Center, MR. THARRINGTON repeatedly followed up with professors via email and meetings to request outstanding class and lecture notes, the lack of which put him behind in his coursework.

23.   Without complete notes for all of his classes, MR. THARRINGTON had great difficulty retaining and studying the course material, preparing for exams and quizzes, and performing on exams and quizzes.

24.   MR. THARRINGTON completed and submitted his application for accommodations on or about March 14, 2022, complete with personal statement, education psychological evaluation, and testing results diagnosing him with Post Traumatic Stress Disorder and Dyslexia.

25.   Dorothy Straughter-Parker (hereinafter "Ms. Parker"), Health, Wellness, and Disability Director at Southern University Law Center, processed and approved MR.

THARRINGTON's request for disability accommodations on July 28, 2022 and emailed MR. THARRINGTON his Disability Accommodation Notice.

26.  The Disability Accommodation Notice granted the following accommodations:

      A.     Extended time on exams and quizzes (1.5x)

      B.     Low distraction testing room

      C.     Notetaker

27.  Ms. Parker instructed MR. THARRINGTON she would notify all of his professors of his Disability Accommodations and send them the Notice once she received his class schedule. She also told MR. THARRINGTON to notify his professors as well.

28.  On or about August 7, 2022, per the instruction of Ms. Parker, MR. THARRINGTON emailed a copy of the Disability Accommodation Notice and a copy of his Concise Student Schedule to all of his professors for the upcoming semester, namely, Professors LaMotte, Stoa, Kochenburger, O'Bear, Durham, and Gelobter.

29.  Professor LaMotte was designated as the administrator that the student note takers reported to. MR. THARRINGTON was instructed by Ms. Parker to notify Professor LaMotte at the beginning of every semester of what classes he would be taking and that Professor LaMotte would then assign notetakers to each class.

30.  MR. THARRINGTON received his official class schedule on August 9, 2022 for the following classes:

      A.     LAWS 1400 Torts I/ Professor Kochenburger

      B.     LAWS 1402 Contracts I/ Professor Stoa

      C.     LAWS 1406 Family Law / Professor O'Bear

      D.     LAWS 407 04 Basic Civil Procedure/ Professor Stoa

    E.      LAWS 421 07 Legal Writing/ Professor Durham

    F.      LAWS 429 07 Lawyering Process/ Professor Gelobter

31.    MR. THARRINGTON started his first semester of classes on August 9, 2022.

32.    MR. THARRINGTON received no response from any of his professors regarding the availability of notetakers nor did he receive notes for the first week of classes. He emailed Professor LaMotte again on August 12, 2022 asking about the availability of notetakers for the second week of classes.

33.    Professor LaMotte responded on August 16, 2022 that some of the notetakers had started to work on notes for the previous week. She asked MR. THARRINGTON to pass Panopto links to his other professors and to remind his professors to record the class sessions, regardless of the fact that this was not MR. THARRINGTON's responsibility.

34.    Upon information and belief, Panopto is a video platform used to record classroom lectures. Panopto is used as a tool by the designated notetakers for each class, who watch the Panopto recordings after class to create their notes. Professors give notetakers the links for their Panopto recordings after each class.

35.    Upon information and belief, the Panopto system is often unreliable and the professors at Southern University Law Center consistently chose not to use it altogether when it was giving them issues. Professors not using Panopto prevented the notetakers from being able to take notes.

36.    Professor LaMotte emailed MR. THARRINGTON again on August 18, 2022, indicating that she was still missing Professor O'Bear and Durhams's Panopto links. She confirmed that all MR. THARRINGTON's professors were notified by her that they needed to record their classes.

37. Instead of taking steps to ensure MR. THARRINGTON received the backlog of notes from notetakers, Professor LaMotte merely suggested he get one of his classmates to give him notes from the first few days of class.

38. After receiving no notes or updates, MR. THARRINGTON emailed Professor LaMotte again on August 22, 2022, during his third week of classes, and stated that he was starting to have serious concerns regarding his accommodation, as he had not received six (6) classes worth of notes and wanted to know when the backlog of class notes would be provided.

39. Professor LaMotte emailed MR. THARRINGTON back the same day saying that two (2) of his professors still have outstanding requests for Panopto links and that his notes from the other professors would be "coming soon." She mentioned that "technical difficulties" with Zoom and the Panopto links were resulting in classes not being recorded, but she did not offer an alternative or a way for MR. THARRINGTON to be able to keep up with his classes.

40. MR. THARRINGTON received no further updates or complete notes.

41. MR. THARRINGTON emailed Professor LaMotte on September 13, 2022 with a spreadsheet showing which class notes were still outstanding: seven (7) days worth of notes for Professor Stoa, three (3) days for Professor O'Bear, and eleven (11) days for Professor Kochenburger.

42. After receiving no reply or notes over a week later, MR. THARRINGTON emailed Professor LaMotte on September 21, 2022, again asking for an update on the missing notes.

43. Ms. Parker emailed MR. THARRINGTON that day stating that she and Professor LaMotte

discussed the missing notes and that she will follow up soon with feedback from Professor LaMotte.

44.    MR. THARRINGTON did not receive the backlog of notes, nor did any administration or professors reach out to him regarding the same.

45.    On October 5, 2022, MR. THARRINGTON emailed Vice Chancellor Vance detailing his concerns about falling behind in classes due to the lack of accommodation. He stated that many of the class notes were still outstanding and many of the notes he had received were not complete or were received weeks after the classroom instruction.

46.    Vice Chancellor Vance responded five (5) days later, on October 10, 2022, saying he is looking into the lack of accommodations and that he has formed an "Ad Hoc Committee" to "deal with accommodation issues in a more efficient manner." He stated the committee would start to meet the next week to address MR. THARRINGTON and other students' concerns regarding their accommodations.

47.    After this email, MR. THARRINGTON received a few more notes for his Basic Civil Procedure and Contracts classes but did not receive all of the outstanding notes for all of his classes.

48.    The same day, on October 10, 2022, MR. THARRINGTON emailed Ms. Parker regarding the lack of complete notes and their poor quality. He requested permission to use his own notes for the final exam. Ms. Parker replied that she had relayed the information to Professor LaMotte and copied Vice Chancellor Vance.

49.    On October 14, 2022, MR. THARRINGTON received an Amended Disability Accommodation Notice from Ms. Parker granting the following accommodations:

        A.    Extended time on exams and quizzes (100%)

     B.     Low distraction testing room

     C.     Notetaker

     D.     The ability to record lectures

     E.     Make lecture recording available

     F.     Screen reader and Text to speech

50. Upon information and belief, Ms. Parker emailed the amended accommodations notice to all of MR. THARRINGTON's professors. MR. THARRINGTON also emailed the notice. Professors Stoa and O'Bear were the only two professors who acknowledged the updated notice email.

51. On November 15, 2022, MR. THARRINGTON emailed Ms. Parker and Vice Chancellor Vance requesting a meeting to discuss the failure of Southern University Law Center to provide accommodations to him as well as his repeated efforts to receive the accommodations Southern University Law Center is required to provide.

52. Ms. Parker responded the same day stating only that the notes she received from note takers are sent out immediately and directed him to communicate with Professor LaMotte regarding the quality of the notes. Chancellor Vance responded to the same email saying that students could not use notes for final exams.

53. MR. THARRINGTON then emailed Chancellor Vance and Dorothy Parker requesting a meeting that week but received no response.

54. At the close of the first semester on November 22, 2023, despite repeated urgent requests, MR. THARRINGTON had not received approximately thirty (30%) percent of his class notes across all of his classes.

55. Due to the failure of DEFENDANTS to provide him his complete accommodations during

the fall semester, MR. THARRINGTON was constantly lagging behind in the curriculum and he had to spend many extra hours attempting to comprehend and internalize the material which resulted in inadequate time for revision and deeper understanding. MR. THARRINGTON's grades suffered as a result.

56.    MR. THARRINGTON started his spring semester classes on January 9, 2023 with the following schedule:

      A.    LAWS 1401 Torts II/ Professor Brown

      B.    LAWS 1403 Contracts II/ Professor Biondo

      C.    LAWS 1404 Criminal Law / Professor Green

      D.    LAWS 1632 Common Law Property/ Professor Roark

      E.    LAWS 422 Legal Writing II/ Professor Durham

      F.    LAWS 408 Legal Research/ Professor Garrard

57.    On January 10, 2023, MR. THARRINGTON received a new Disability Accommodation Notice granting the following accommodations:

      A.    Extended time on exams and quizzes (100%)

      B.    Low distraction testing room

      C.    The ability to record lectures

      D.    Provide student copies of lecture notes

      E.    Screen reader and Text to speech

58.    On January 10, 2023, MR. THARRINGTON emailed all of his professors a copy of the Disability Accommodation Notice, pointing out specifically the accommodation for lecture notes.

59.    Upon information and belief, Ms. Parker emailed MR. THARRINGTON's Disability

Accommodation Notice to all his professors on January 10, 2023.

60.    Professor Biondo emailed MR. THARRINGTON back the same day asking to schedule a Zoom meeting to discuss his accommodations. MR. THARRINGTON replied with his availability, however, Professor Biondo never replied, nor did he schedule a meeting.

61.    On January 11, 2023, MR. THARRINGTON approached Professor Biondo after class and Professor Biondo told MR. THARRINGTON to again email his availability for a meeting. After receiving no response again, MR. THARRINGTON sent a second email to Professor Biondo on January 12, 2023, copying Ms. Parker, Associate Vice Chancellor Reed, and Chancellor Pierre. Professor Biondo responded to this email saying he will meet after class.

62.    Thereafter, Professor Biondo began providing MR. THARRINGTON incomplete, abbreviated PowerPoint slides before classes and he failed to provide class notes from notetakers. Professor Biondo admitted to MR. THARRINGTON that the PowerPoint slides were not complete because he felt that complete PowerPoints would be an "unfair advantage" to MR. THARRINGTON over the other students.

63.    On February 3, 2023, MR. THARRINGTON emailed Professor Roark with another copy of the Disability Accommodation Notice, stating that a note taker had not been provided for Professor Roark's class despite his assurance it would be. MR. THARRINGTON specified that full lecture notes had not been provided for the first four (4) weeks of class, putting him at a disadvantage. MR. THARRINGTON received no reply from Professor Roark.

64.    That same day, Ms. Parker notified MR. THARRINGTON for the first time that notetakers were not going to be provided this semester and that, per a meeting she had with Vice Chancellor Vance, the faculty must use the Panopto transcription method and provide

students with the link to the recording.

65. MR. THARRINGTON received no notes for any of his Spring Semester classes in January and February.

66. On February 23, 2023, MR. THARRINGTON again emailed Professor Roark and Professor Kochenburger, asking for the accommodations he still had not received and asking for an action plan within seven (7) business days to cure the deficiency.

67. Professor Roark responded that Ms. Parker would have to set up a notetaker or a way for MR. THARRINGTON to receive lecture notes.

68. MR. THARRINGTON received his first set of notes from Professors Roark and Kochenburger on March 9, 2023, over two months into the semester.

69. On March 16, 2023, Professor Biondo sent an email to MR. THARRINGTON and all of his classmates in his Contracts II class with an attachment that included an email that Professor Biondo had originally sent to Ms. Parker, MR. THARRINGTON, and three students receiving accommodations. Several of MR. THARRINGTON's classmates alerted him to the email.

70. By and through this email, Professor Biondo disclosed MR. THARRINGTON's disability status to individuals who had no need to know of his accommodation status.

71. Mr. Tharrington filed a grievance complaint with Southern University Law Center regarding Professor Biondo's disclosure of his accommodation status to other students on March 16, 2023, in violation of the confidentiality requirements of the ADA.

72. MR. THARRINGTON never received a response to this complaint nor any follow-up.

73. On March 27, 2023 MR. THARRINGTON met with Chancellor Pierre to discuss his lack of accommodations. At this meeting MR. THARRINGTON told Chancellor Pierre that he

had to make accommodations of his own the previous semester, such as asking classmates for notes, to not fall completely behind due to the lack of accommodations from DEFENDANTS.

74.  Upon information and belief, Chancellor Pierre stated MR. THARRINGTON would have to make his own accommodations again. When MR. THARRINGTON told him that was not feasible, Chancellor Pierre responded that he did not want "push back" and that he wanted to make sure MR. THARRINGTON received the accommodations he needed. Chancellor Pierre offered to select new teachers for MR. THARRINGTON who he knew would be willing to provide lecture notes. MR. THARRINGTON responded that this would not grant him equal access as his teachers would be chosen based on their willingness to accommodate him. MR. THARRINGTON again told Chancellor Pierre that notetakers were not being provided, the notes he did receive were poor quality, and professors were sporadically using the Panopto system. Chancellor Pierre assured MR. THARRINGTON that he would reach out to his professors and arrange for the missing notes to be provided and the Panopto system to be used consistently.

75.  On March 28, 2023, per Chancellor Pierre's request, MR. THARRINGTON emailed him a list of his accommodations that DEFENDANTS had failed to provide for the Spring Semester, which were the following:

    A.    Notetaker

    B.    Missing notes for January and February for all doctrinal classes.

    C.    A timeline of when the missing notes would be received.

    D.    Training on Panopto to access all functions in order to acquire lecture recordings.

E.    All professors to record the entirety of all their classes, as they often failed to record or recorded partially when the technology was not working.

76.    Chancellor Pierre did not respond to the email, nor did MR. THARRINGTON receive his missing notes or recordings.

77.    At the close of the Spring Semester on or about April 19th, 2023, MR. THARRINGTON had not received forty (40%) to fifty (50%) percent of his class notes.

78.    The failure of DEFENDANTS to provide approximately half the class notes required by MR. THARRINGTON's Approved Accommodations left MR. THARRINGTON perpetually unprepared and heightened his stress and anxiety tremendously. This heightened stress and anxiety had a negative effect on his ability to take tests and his overall ability to understand the course content for all of his classes.

79.    As a result, MR. THARRINGTON's grades in the Spring Semester dropped significantly lower than his Fall Semester grades.

80.    On April 13, 2023, after DEFENDANTS' failure to provide accommodation or communicate, MR. THARRINGTON mailed a Notice of Intent to Sue to Chancellor Pierre and Southern University Board of Supervisors.

81.    On April 25, 2023 MR. THARRINGTON received an email from Associate Vice Chancellor Reed, advising that a committee was formed to address MR. THARRINGTON's concerns regarding his accommodations and that he should contact Ms. Parker to sign a release to allow the committee to see his medical records.

82.    MR. THARRINGTON declined to sign the medical release, citing his right to privacy and that he had already submitted his medical records to DEFENDANTS when he applied for

accommodations.

83. MR. THARRINGTON started his Summer Semester on June 9, 2023 with the following class schedule:

    A.     LAWS 502 Evidence/ Professor Carmena

    B.     LAWS 671 Law & Technology/ Professor Shields

    C.     LAWS 778 Law and Medicine/ Professor Dickerson

84. Ms. Parker emailed all of MR. THARRINGTON's professors on June 1, 2023 with MR. THARRINGTON's Disability Accommodation Notice. Only Professor Dickerson responded "received."

85. To date, no professor MR. THARRINGTON had for the summer Semester has communicated with MR. THARRINGTON regarding his accommodations and MR. THARRINGTON has only received lecture notes for one class.

86. Due to not receiving adequate accommodation for two semesters and his summer classes, MR. THARRINGTON's grades suffered because he was unable to adequately prepare for exams and assignments. Further, his repeated requests to DEFENDANTS for the accommodations they should have provided caused severe and prolonged stress and emotional distress.

87. DEFENDANTS' discrimination caused MR. THARRINGTON severe emotional distress and worsened his PTSD symptoms. After his mental health counselor at the Veterans Affairs Department recommended transferring due to the effect the stress was having on MR. THARRINGTON's PTSD, MR. THARRINGTON decided to transfer to Louisiana State University for the Fall Semester. The transfer process had caused him further anxiety, stress, and expenses.

88. Upon information and belief, MR. THARRINGTON's grades would not have dropped, he would not have experienced anxiety, stress, and worsened PTSD symptoms, and he would not have had to transfer schools had he been provided full accommodation by DEFENDANTS.

89. Due to the lack of sufficient accommodations, MR. THARRINGTON has suffered embarrassment, distress, anxiety, isolation, and invasion of his civil rights. MR. THARRINGTON also intends to prove at trial that the lack of sufficient accommodations has caused his grades to suffer.

90. Southern University publishes a "Student Code of Conduct and Other Student-Related Policies," ("Code of Conduct") which according to Southern University sets "forth, in a concise and uniform manner, responsibilities which members of the University community owe one another."

91. According to the Code of Conduct at Southern University there is a "a special set of interests and purposes which include: • the opportunity for students to attain their educational objectives; • the maintenance of an intellect • and educational atmosphere throughout the University;"

92. Further, according to the Code of Conduct, "Every student has the right to: • full and proper respect of faculty, staff, and the administration;"

93. Thus, in enrolling at Southern University, MR. THARRINGTON developed an expectation interest that he would have an opportunity to obtain his educational objectives, he would be able to participate in an educational atmosphere, and that he would receive "full and proper" respect from the faculty.

94. By and through discrimination outlined in this Complaint, and as will be shown at trial,

MR. THARRINGTON's expectations were not satisfied.

95. Upon information and belief, DEFENDANTS breached their promise not to discriminate against MR. THARRINGTON in exchange for Federal funding under the RA.

96. Upon information and belief, DEFENDANTS were aware that, for breaching their contract with the Federal Government, they would be subjected to the usual contract remedies in private suits, which include MR. THARRINGTON's expectation interest.

97. MR. THARRINGTON is entitled to damages that will put him in as good a position as he would have been in had expectation interests been satisfied by DEFENDANTS.  Upon information and belief, due to the lack of sufficient accommodations, MR. THARRINGTON was not afforded an equal opportunity to engage in the services, programs, and activities offered by DEFENDANTS.

98. Upon information and belief, MR. THARRINGTON was not afforded an equal opportunity to learn and participate in his courses in the same manner as individuals who do not require accommodation.

99. Upon information and belief, DEFENDANTS were aware of MR. THARRINGTON's disability.

100. Upon information and belief, as a result of DEFENDANTS' failure to ensure MR. THARRINGTON's accommodations were provided, he received services that were objectively substandard and that were inferior to those provided to individuals who do not have a disability.

101. DEFENDANTS intentionally discriminated against MR. THARRINGTON in that their actions were "purposeful" and/or MR. THARRINGTON had given DEFENDANTS' employee notice of his disability, limitations, and needed accommodations; additionally,

DEFENDANTS intentionally discriminated against MR. THARRINGTON with deliberate indifference to his rights and to MR. THARRINGTON's accommodation needs; DEFENDANTS' discrimination has caused MR. THARRINGTON invasion of his civil rights, exacerbation of his PTSD symptoms, breach/violation of MR. THARRINGTON's expectations, and actual damages related to switching schools.

### STATEMENT OF FACTS FOR VALERIE LEWIS

102. MS. LEWIS is a veteran with Post Traumatic Stress Disorder, Fibromyalgia, Carpal Tunnel Syndrome, Cervical Neck Strain, Knee and Back Injuries.

103. Due to her disability, MS. LEWIS is substantially impaired in several major life activities and requires accommodations within educational environments. MS. LEWIS has difficulty absorbing and processing information, reading skills, writing, and spelling, and especially in a classroom or note-taking setting and requires extra time to complete assignments, exams, and quizzes.

104. Specifically, in a classroom setting MS. LEWIS requires a notetaker to take notes for her and PowerPoint presentations to refer back to in order for her to process and retain classroom lecture material.

105. MS. LEWIS applied to Southern University Law Center for and received a Disability Accommodation Notice granting her the accommodations necessary for her to partake in DEFENDANTS' classes and curriculum in a manner that is equivalent to that of persons who do not have Post Traumatic Stress Disorder, Fibromyalgia, Carpal Tunnel Syndrome, Cervical Neck Strain, Knee and Back Injuries.

106. MS. LEWIS started classes at Southern University Law Center in August 2022 and she is still currently enrolled.

107. Throughout her time at Southern University Law Center, however, MS. LEWIS has not been provided the class and lecture notes, additional time for quizzes and assignments, breaks during class, and PowerPoint presentations required in her Approved Accommodations.

108. After beginning her classes at Southern University Law Center, MS. LEWIS repeatedly followed up with professors via email regarding the outstanding accommodations, the lack of which was putting her behind in her coursework.

109. Without these complete accommodations for all of her classes, MS. LEWIS had great difficulty retaining and studying the course material, preparing for exams and quizzes, and performing on exams, quizzes, and class assignments.

110. MS. LEWIS completed and submitted her application for accommodations on or about July 2022.

111. Ms. Parker processed and approved MS. LEWIS's request for disability accommodations on July 26, 2022 and emailed MS. LEWIS her Disability Accommodation Notice.

112. The Disability Accommodation Notice granted the following accommodations:

    A.    Extended time on exams and quizzes (100%)

    B.    Low distraction testing room

    C.    Notetaker

    D.    Breaks during class as needed

    E.    PowerPoint presentations and any other materials to review before lectures in large print/font size

    F.    Additional time for assignments given to the student (professor decides the reasonable date and time of completion based on the assignment)

113.   Ms. Parker processed and approved MS. LEWIS's amended Disability Accommodation Notice on or about July 26, 2022, granting her the following additional accommodation:

        A.   Front row seating.

114.   Ms. Parker instructed MS. LEWIS she would notify all of her professors of her Disability Accommodations and send them the Notice.

115.   MS. LEWIS's Fall Semester 2022 class schedule was as follows:

        A.    LAWS 1400 Torts I/ Professor Mason

        B.    LAWS 1402 Contracts I/ Professor Frye

        C.    LAWS 1406 Family Law / Professor Brown

        D.    LAWS 407 03 Basic Civil Procedure/ Professor Sergienko

        E.    LAWS 421 06 Legal Writing/ Professor Ricard

        F.    LAWS 429 06 Lawyering Process/ Professor LaMotte

116.   In early August, 2022, after classes had started, MS. LEWIS discovered that Ms. Parker had not sent her Disability Accommodations to every one of her professors and MS. LEWIS had to email them and/or follow up in person with her professors.

117.   On August 7, 2022, Ms. Parker emailed MS. LEWIS instructing her to email Professor Kimberly LaMotte her student schedule for the Fall 2022 Semester in order to be assigned a notetaker.

118.   Professor LaMotte had not responded to MS. LEWIS by August 12, 2022, and on that date MS. LEWIS sent an email to Ms. Parker informing her that she was falling behind in her classes due, in part, to not yet having a notetaker. Ms. Parker responded that she would reach out to Professor LaMotte

119.   On or about August 22, 2022, Ms. Parker finally emailed MS. LEWIS some class notes

from the notetaker. However, the notes were incomplete and, instead of providing notes for the August 17, 2022 and August 19, 2022 classes, the notetaker merely noted that they did not take notes on those days because no recording was provided.

120. MS. LEWIS continued to have to remind professors and ask for notes from professors and Ms. Parker only to get untimely notes, sometimes several months overdue, incomplete and inadequate notes, or no notes at all for a majority of her classes.

121. On September 5, 2022, MS. LEWIS emailed Ms. Parker informing her that Professor Ricard had refused to give her more time on an assignment, as required by her accommodations, and despite MS. LEWIS's requests. MS. LEWIS informed Ms. Parker that she reached out to Disability Rights Louisiana due to being denied accommodations. MS. LEWIS also asked to be transferred out of Professor Ricard's class.

122. MS. LEWIS then spoke with Vice Chancellor Vance about the lack of accommodations and, upon information and belief, Chancellor Vance told her they would "do better," but did nothing further.

123. MS. LEWIS was not transferred out of Professor Ricard's class. Upon information and belief, Professor Ricard subsequently told MS. LEWIS she would grant accommodations but that she would not do so "in perpetuity."

124. All of MS. LEWIS's professors continued to fail to provide her full accommodations through the Fall and Spring Semesters.

125. MS. LEWIS's Spring Semester 2023 class schedule was as follows:

    A.    LAWS 1401 Torts II/ Professor Washington

    B.    LAWS 1403 Contracts II/ Professor Stoa

    C.    LAWS 1404 Criminal Law / Professor Oko

      D.      LAWS 1632 Common Law Property/ Professor Freeman-Morris

      E.      LAWS 408 Legal Research/ Professor Huderson-Poydras

      F.      LAWS 422 Legal Writing II/ Professor Furnier

126. At the close of the Spring Semester in April 2023, MS. LEWIS had not received about ninety (90%) percent of her class notes. All her professors failed to provide any lecture notes or PowerPoint presentations and she was often not given breaks during class and additional time for assignments.

127. The failure of DEFENDANTS to provide the accommodations required by MS. LEWIS's Approved Accommodations left MS. LEWIS perpetually unprepared and heightened her stress and anxiety tremendously. This had a negative effect on her ability to take tests, quizzes, and class assignments and her overall ability to understand and process the course content for all of her classes.

128. As a result, MS. LEWIS's grades dropped significantly.

129. Further, MS. LEWIS's repeated requests to DEFENDANTS for the accommodations they should have provided caused severe and prolonged stress and emotional distress.

130. Upon information and belief, MS. LEWIS's grades would not have dropped had she been provided full accommodation by DEFENDANTS.

131. Due to the lack of sufficient accommodations, MS. LEWIS has suffered embarrassment, distress, anxiety, isolation, and invasion of her civil rights. MS LEWIS also intends to prove at trial that the lack of sufficient accommodations has caused her grades to suffer.

132. By enrolling at Southern University, MS. LEWIS developed an expectation interest that she would have an opportunity to obtain her educational objectives, she would be able to participate in an educational atmosphere, and that she would receive "full and proper"

respect from the faculty.

133.   By and through discrimination outlined in this Complaint, and as will be shown at trial, MS. LEWIS's expectations were not satisfied.

134.   Upon information and belief, DEFENDANTS breached their promise not to discriminate against MS. LEWIS in exchange for Federal funding under the RA.

135.   Upon information and belief, DEFENDANTS were aware that, for breaching their contract with the Federal Government, they would be subjected to the usual contract remedies in private suits, which include MS. LEWIS's expectation interest.

136.   MS. LEWIS is entitled to damages that will put her in as good a position as she would have been in had expectation interests been satisfied by DEFENDANTS. Upon information and belief, due to the lack of sufficient accommodations, MS. LEWIS was not afforded an equal opportunity to engage in the services, programs, and activities offered by DEFENDANTS.

137.   Upon information and belief, MS. LEWIS was not afforded an equal opportunity to learn and participate in her courses in the same manner as individuals who do not require accommodation.

138.   Upon information and belief, DEFENDANTS were aware of MS. LEWIS's disability.

139.   Upon information and belief, because of DEFENDANTS' failure to ensure MS. LEWIS's accommodations were provided, she received services that were objectively substandard and that were inferior to those provided to individuals who do not have a disability.

140.   MS. LEWIS is presently enrolled in Southern University Law Center's 2023 Fall Semester.

141.   MS. LEWIS has an "actual or imminent" date that the harm will resume. Specifically, MS. LEWIS anticipates that the harm will resume as soon as she begins her Fall Semester

classes at Southern University Law Center.

142. Further, MS. LEWIS's harm is "actual" and is not abstract. MS. LEWIS has suffered this exact harm (DEFENDANTS' failure to accommodate) in the past and reasonably anticipates that she will suffer the harm again.

143. DEFENDANTS intentionally discriminated against MS. LEWIS in that their actions were "purposeful" and/or MS. LEWIS had given DEFENDANTS' employee notice of her disability, limitations, and needed accommodations; additionally, DEFENDANTS intentionally discriminated against MS. LEWIS with deliberate indifference to her rights and to MS. LEWIS's accommodation needs; DEFENDANTS' discrimination has caused MS. LEWIS invasion of her civil rights, exacerbation of her PTSD symptoms, and breach/violation of MS. LEWIS's expectations.

## COUNT I – VIOLATION OF TITLE II OF THE AMERICANS WITH DISIBILITIES ACT SOLELY AS TO DENNIS J. SHIELDS IN HIS OFFICIAL CAPACITY

144. PLAINTIFFS reallege and reaver Paragraphs 1-143 as if they were expressly restated herein.

145. PLAINTIFFS have been enrolled as students at Southern University Law Center, but on numerous occasions have been denied the accommodations necessary to partake in DEFENDANTS' classes and curriculum in a manner that is equivalent to that of persons who do not have disabilities.

146. DEFENDANTS have repeatedly discriminated against PLAINTIFFS by failing and/or refusing to provide the accommodations necessary to ensure PLAINTIFFS are able to participate in classes, study and review class material, and prepare for and take exams. As a result, PLAINTIFFS were unable to meaningfully engage in the educational services

provided at Southern University Law Center.

147.   Due to the discrimination they have suffered, PLAINTIFFS have suffered loss of educational opportunities, lowered grades, stress and emotional distress, segregation and isolation, and invasion of their civil rights.

148.   Plaintiff MS. LEWIS seeks injunctive and declaratory relief and attorneys' fees and costs to redress MR. SHIELDS's unlawful discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*

149.   Plaintiff MR. THARRINGTON seeks attorneys' fees and costs to redress MR. SHIELDS's unlawful discrimination on the basis of disability in violation of Section 504 of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.

150.   At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12131, et seq. has been in full force and effect and has applied to MR. SHIELDS's conduct.

151.   At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to MR. SHIELDS's conduct.

152.   At all times relevant to this action, Plaintiff MR. THARRINGTON has been substantially limited in the major life activities of reading skills, writing, and spelling, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

153.   At all times relevant to this action, Plaintiff MS. LEWIS has been substantially limited in the major life activities of reading skills, writing, and spelling, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

154.   DEFENDANTS are a public entity within the meaning of Title II of the ADA, 42 U.S.C. § 12131(1).

155.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

156.  Federal regulations implementing Title II of the ADA provide that a public entity may not "(i) deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; [or] (iii) provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1).

157.  Federal regulations implementing Title II of the ADA further provide that "a public entity shall operate each service, program, or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

158.  Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

159.  MR. SHIELDS discriminated against PLAINTIFFS, on the basis of their disability, in violation of Title II of the ADA and its implementing regulations.

160.  Plaintiff MS. LEWIS is therefore entitled to injunctive relief, as well as an award of attorneys' fees and costs (including expert expenses), pursuant to Title II of the ADA.

161.  Plaintiff MR. THARRINGTON is entitled to an award of attorneys' fees, costs (including expert expenses) pursuant to Title II of the ADA.

## CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

162.  PLAINTIFFS repeat and reallege all preceding paragraphs in support of this claim.

163.  At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, has been in full force and effect and has applied to DEFENDANTS' conduct.

164.  At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to DEFENDANTS' conduct.

165.  At all times relevant to this action, MR. THARRINGTON has had substantial limitations to his major life activities of reading skills, writing, and spelling, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

166.  At all times relevant to this action, MS. LEWIS has had substantial limitations to her major life activities of reading skills, writing, and spelling, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

167.  Southern University publishes a "Student Code of Conduct and Other Student-Related Policies," ("Code of Conduct") which according to Southern University sets "forth, in a concise and uniform manner, responsibilities which members of the University community owe one another."

168.  According to the Code of Conduct at Southern University there is a "a special set of

interests and purposes which include: • the opportunity for students to attain their educational objectives; • the maintenance of an intellect • and educational atmosphere throughout the University;"

169. Further, according to the Code of Conduct, "Every student has the right to: • full and proper respect of faculty, staff, and the administration;"

170. Thus, in enrolling at Southern University, PLAINTIFFS developed an expectation interest that they would have an opportunity to obtain their educational objectives, they would be able to participate in an educational atmosphere, and that they would receive "full and proper" respect from the faculty.

171. By and through discrimination outlined in this Complaint, and as will be shown at trial, PLAINTIFFS' expectations were not satisfied.

172. Upon information and belief, DEFENDANTS breached their promise not to discriminate against PLAINTIFFS in exchange for Federal funding under the RA.

173. Upon information and belief, DEFENDANTS were aware that, for breaching their contract with the Federal Government, they would be subjected to the usual contract remedies in private suits, which include PLAINTIFFS' expectation interest.

174. PLAINTIFFS are entitled to damages that will put them in as good a position as they would have been in had expectation interests been satisfied by DEFENDANTS.

175. The Rehabilitation Act provides that:

No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

176. Upon information and belief, as set forth herein, DEFENDANTS discriminated against PLAINTIFFS on the basis of disability, in violation of 29 U.S.C. § 794.

177. Upon information and belief, a non-exclusive list of DEFENDANTS' violations of the Rehabilitation Act and discriminatory conduct against PLAINTIFFS are evidenced by:

    A. Denying PLAINTIFFS access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered by DEFENDANTS;

    B. By otherwise limiting PLAINTIFFS in the enjoyment of the rights, privileges, advantages, and opportunities enjoyed by individuals without disabilities who receive DEFENDANTS' aids, benefits, and services;

    C. Failing to provide reasonable accommodation to PLAINTIFFS; and

    D. Excluding PLAINTIFFS from participation in, and the benefits of, DEFENDANTS' services, programs, and activities as a result of DEFENDANTS failing to provide PLAINTIFFS with reasonable accommodation.

178. Upon information and belief, there are additional, ongoing violations of the Rehabilitation Act which Plaintiff MS. LEWIS is more likely than not going to encounter upon continuing to take classes at Southern University Law Center.

179. PLAINTIFFS bring this action:

    A. To redress injuries suffered as a result of DEFENDANTS'

discriminatory actions and inactions set forth herein;

B.    To reasonably avoid further and future injury to PLAINTIFFS as a result of DEFENDANTS' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C.    To ensure DEFENDANTS' services, programs, and activities are accessible as required by the relevant applications of Title II of the ADA;

D.    To be made whole and ensure future compliance; and

E.    To reasonably avoid future ADA and Rehabilitation Act litigation involving the same DEFENDANTS and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

180.   PLAINTIFFS consistently and repeatedly informed DEFENDANTS they were not receiving the reasonable accommodations required by their Approved Accommodations which are necessary for PLAINTIFFS to partake in DEFENDANTS' classes and curriculum in a manner that is equivalent to that of persons who do not have disabilities.

181.   PLAINTIFFS repeatedly contacted their professors, chancellors, and DEFENDANTS' administration regarding their failure to provide reasonable accommodations.

182.   MR THARRINGTON filed a grievance complaint with Southern University Law Center when his professor violated the confidentiality requirement of the ADA.

183.   Nonetheless, DEFENDANTS failed to respond to PLAINTFFS' complaints or remedy the failures to accommodate outlined in this action.

184. DEFENDANTS had an opportunity to accommodate PLAINTIFFS. Despite receipt of numerous emails, notices, and a grievance complaint from MR. THARRINGTON, DEFENDANTS failed to provide PLAINTIFFS with their accommodations in response to their requests.

185. DEFENDANTS had knowledge of PLAINTIFFS' disabilities, limitations, and requested accommodations.

186. Despite knowledge of PLAINTIFFS' disabilities, limitations, and requested accommodations, DEFENDANTS failed to accommodate PLAINTIFFS. DEFENDANTS' failure to accommodate PLAINTIFFS when faced with their stated needs constitutes intentional discrimination.

187. As set forth above, PLAINTIFFS have been denied access to, and without the relief requested herein, will continue to be denied the access to the goods, services, programs, facilities, activities, and accommodations offered by DEFENDANTS solely by reason of their disability, and have otherwise been discriminated against and damaged solely by reason of their disability as a result of DEFENDANTS' Rehabilitation Act violations set forth above.

188. PLAINTIFFS have been obligated to retain undersigned counsel for the filing and prosecution of this action, and undersigned counsel is incurring reasonable attorneys' fees, including costs and litigation expenses, incurred in this action. PLAINTIFFS are entitled to recover those attorneys' fees, costs and litigation expenses from DEFENDANTS pursuant to 29 U.S.C. §794(b).

189. Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant Plaintiff MS. LEWIS injunctive relief, including an order to alter the subject premises, facilities,

services, activities, programs, and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; and grant PLAINTIFFS compensatory damages for DEFENDANTS' discriminatory actions.

## **PRAYER FOR RELIEF**

**WHEREFORE,** PLAINTIFFS respectfully pray that:

A.    This Court issue a Declaratory Judgment that determines that DEFENDANTS' policies, procedures, and practices have subjected PLAINTIFFS to unlawful discrimination in violation of the ADA and RA.

B.    This Court grant permanent injunctive relief to MS. LEWIS against MR. SHIELDS, Ordering him to cease violating the statutory and regulatory requirements of the ADA, and RA.

C.    This Court grant permanent injunctive relief to MS. LEWIS against the BOARD Ordering it to cease violating the statutory and regulatory requirements of the RA.

D.    This Court issue an injunction to MS. LEWIS Ordering PLAINTIFFS:

i.    to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against PLAINTIFFS or individuals with a disability by failing to provide reasonable accommodation;

ii.    to develop, implement, promulgate, and comply with a policy requiring that notetakers or class notes be provided within twenty-four (24) hours of a class lecture to all individuals with disabilities

whose  Disability  Accommodation  Notices  require  these accommodations; and

iii. to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are disabled under the ADA, and the RA.

E. Award to PLAINTIFFS:

i. Compensatory, nominal, and actual damages pursuant to the RA;

ii. Reasonable attorneys' fees, costs (including expert fees), and other expenses of suit, to PLAINTIFFS pursuant to the ADA and RA.

iii. Interest on all amounts, at the highest rates and from the earliest dates allowed by law; and

iv. Any and all other equitable or legal relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS demand a trial by jury on all issues.

Dated: August 21, 2023

Respectfully Submitted,

/s/ Garret S. DeReus
**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Annika Mengisen (LA # 35524)
annika@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9999